TJT/SME:MGD
F. #2022R00135

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | S U P E R S E D I N G<br>I N F O R M A T I O N |
| - against - | |
| | Cr. No. 23-145 (S-1) (HG) |
| KATE SPENCER, | (T. 18, U.S.C., §§ 982(a)(1), 982(a)(2), |
| | 982(b)(1), 1349, 1956(h), 2 and 3551 et |
| Defendant. | seq.; T. 21, U.S.C., § 853(p)); T. 26, |
| | U.S.C., § 7206(2)) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE UNITED STATES CHARGES:

INTRODUCTION

At all times relevant to this Superseding Information, unless otherwise indicated:

I.  Background

    A.  The Paycheck Protection Program

    1.  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020, which was designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses through a program referred to as the Paycheck Protection Program ("PPP"). In or about April 2020, Congress authorized over $300 billion in additional PPP funding.

    2.  To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP

loan application required the business (through its authorized representative) to acknowledge the program rules and to make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation in support of their payroll expenses.

3. The PPP was overseen by the U.S. Small Business Administration ("SBA"), which was headquartered in Washington, D.C., and had authority over all PPP loans. Individual PPP loans, however, were issued by approved private lenders such as participating financial institutions and credit unions (the "Lenders"). The Lenders received and processed PPP applications and supporting documentation and made loans using the Lenders' own funds.

4. Upon approval of a PPP loan application, the Lenders funded the PPP loan, which was 100 percent guaranteed by the SBA. Data from the PPP loan application, including information about the borrower, the total amount of the loan and the listed number of employees, was transmitted by the Lenders to the SBA in the course of processing the loan.

5. PPP loan proceeds were permitted to be used by the borrower on certain specified expenses, such as payroll costs, interest on mortgages, rent and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the borrower spent the loan proceeds on these enumerated expense items within a designated period of time and used a certain amount of the PPP loan proceeds on payroll expenses.

B.      The Economic Injury Disaster Loan Program

6.      The Economic Injury Disaster Loan ("EIDL") Program was an SBA program that provided low-interest financing to small businesses, renters and homeowners in regions affected by declared disasters.

7.      Another source of relief provided by the CARES Act was the authorization of up to $2 million in EIDLs to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.   Under the program, the SBA was authorized to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL ("EIDL Advances").   The amount of an EIDL Advance was determined based on the number of employees working for the applicant.   The advance did not have to be repaid.

8.      To obtain an EIDL or EIDL Advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster and cost of goods sold in the 12-month period preceding the disaster.   In the case of EIDLs for COVID-19 relief, the 12-month period was the period preceding January 31, 2020.   The applicant also was required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

9.      EIDL applications were submitted directly to the SBA and processed by the SBA with support from a government contractor.   The amount of the loan, if the application was approved, was determined based, in part, on the information provided in the application about number of employees, revenue and cost of goods, as described above.   Any funds issued under an EIDL were issued directly by the SBA.   EIDL funds could be used for payroll expenses, sick leave, production costs and business obligations, such as debts, rent and mortgage

payments. If the applicant also obtained a loan under the PPP, the EIDL funds could not be used for the same purpose as the PPP funds.

C. The Defendant and Relevant Entities

10. The defendant KATE SPENCER was a resident of Brooklyn, New York. SPENCER, together with her partner Ziv Biton ("Biton"), owned and controlled the companies Physician's Drug Plan of America LLC ("PDPA"), Spencer Insurance LLC ("Spencer Insurance"), Swyping LLC ("Swyping") and Friendly Assembly LLC ("Friendly Assembly") (collectively the "Scheme Companies").

11. PDPA was a Florida company formed by the defendant KATE SPENCER in approximately May 2012 that was purportedly in the health and medical insurance industry.

12. Spencer Insurance was a purported Florida company incorporated by the defendant KATE SPENCER in approximately March 2012 that was purportedly in the health and life insurance industry.

13. Swyping was a New York company operating since approximately 2018 that purportedly did business in Brooklyn, New York, and was in the finance industry. Biton was listed as Swyping's owner and designated agent in Swyping's Articles of Organization.

14. Friendly Assembly was a New York company operating since approximately 2017 that purportedly provided furniture repair services in Brooklyn, New York.

15. Bank 1, Bank 2, Bank 3, Bank 4 and Bank 5, entities the identities of which are known to the United States, were each a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC").

16. Lender 1 and Lender 2, entities the identities of which are known to the United States, were each companies approved by the SBA as Lenders in the PPP.

17. Company 1, an entity the identity of which is known to the United States, was a title and escrow company located in Florida.

18. Company 2, an entity the identity of which is known to the United States, was a construction company located in Florida.

II.  The Fraudulent Scheme and Money Laundering

19. In or about and between approximately May 2020 and July 2021, the defendant KATE SPENCER and Biton agreed to execute and executed a scheme to submit fraudulent PPP loan and EIDL applications and materials on behalf of the Scheme Companies in order to enrich themselves.

20. In particular, the defendant KATE SPENCER and Biton submitted and caused to be submitted to Lenders, including Bank 1, Bank 2, Bank 3, Bank 4, Lender 1 and Lender 2, and to the SBA, numerous PPP loan and EIDL applications for the Scheme Companies that contained materially false and fraudulent representations and statements, including, among other things: (a) the Scheme Companies' number of employees, payroll and other expenses; (b) income, revenue and receipts; and (c) the purposes of the loans.

21. In addition, in furtherance of the scheme, the defendant KATE SPENCER and Biton also submitted and caused the submission of altered, falsified and fabricated documents, including bank statements and tax documents, to support the fraudulent applications. These fraudulent documents falsely stated and reflected, among other things: (a) income; (b) expenses; and (c) the names and identities of account holders.

22. The defendant KATE SPENCER and Biton opened and controlled bank accounts in their own names at Bank 5, including accounts that they used to receive PPP and EIDL funds.  Since at least January 2020, SPENCER was the sole signatory on bank accounts at Bank 5 with account numbers ending in 5235 (the "5235 Account") and 7971 (the "7971

Account"). Biton was the sole signatory on bank accounts at Bank 5 with account numbers ending in 3205 (the "3205 Account") and 3140 (the "3140 Account").

23. In total, in or about and between May 2020 and June 2021, the defendant KATE SPENCER and Biton fraudulently obtained approximately $1.7 million in PPP loans and EIDLs for the Scheme Companies.

24. In or about and between May 2020 and January 2022, after the defendant KATE SPENCER and Biton received the PPP and EIDL funds into the 5235 Account and the 3205 Account, they used the funds to conduct numerous transactions over $10,000, including to purchase residential property in Florida, for investments and to pay for personal expenses. They also transferred funds among accounts in their names at Bank 5, including, among others, the 5235 Account and the 3205 Account.

III. The False Tax Returns

25. In or about and between approximately April 1, 2022 and May 31, 2022, a tax preparer acting on behalf of the defendant KATE SPENCER filed with the Internal Revenue Service ("IRS") 15 IRS Forms 941 for Tax Years 2020 and 2021. The Forms 941 falsely stated that the Scheme Companies were entitled to tax credits totaling approximately $674,479. The forms were filed with the IRS with SPENCER's full knowledge and consent. As a result of the filing of the false Forms 941, the IRS paid SPENCER and Biton approximately $290,590 in tax refunds to which they were not entitled.

COUNT ONE
(Conspiracy to Commit Wire and Bank Fraud)

26. The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

6

27. In or about and between May 2020 and June 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant KATE SPENCER, together with others, did knowingly and intentionally conspire:

  (a) to devise a scheme and artifice to defraud Lenders and the SBA and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343; and

  (b) to execute a scheme and artifice to defraud one or more financial institutions, including Bank 1, Bank 2, Bank 3 and Bank 4, and to obtain moneys, funds, credits, assets and other property owned by, and under the custody and control of, those financial institutions by means of one or more materially false and fraudulent pretenses, representations and promises, contrary to Title 18, United States Code, Section 1344.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNT TWO
(Money Laundering Conspiracy)

28. The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

29. In or about and between May 2020 and January 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant KATE SPENCER, together with others, did knowingly and intentionally conspire to engage in one or more financial transactions in and affecting interstate commerce, to wit: deposits, withdrawals and transfers of funds and monetary instruments, in and affecting interstate and

foreign commerce, by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344, contrary to Title 18, United States Code, Section 1957.

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNT THREE
(Procuring a False and Fraudulent Tax Return)

30. The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

31. On or about April 18, 2022, within the Eastern District of New York and elsewhere, the defendant KATE SPENCER did knowingly and willfully aid and assist in, and procure, counsel and advise the preparation and presentation under, and in connection with a matter arising under, the internal revenue laws, of returns, claims and other documents, to wit: a 2021 IRS Form 941 submitted on behalf of Friendly Assembly, which was false and fraudulent as to one or more material matters, in that the 2021 IRS Form 941 falsely indicated that Friendly Assembly was entitled to claim a tax refund of $75,050 when, as SPENCER well knew and believed, Friendly Assembly was not entitled to claim such a tax refund.

(Title 26, United States Code, Section 7206(2); Title 18, United States Code, Sections 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT ONE

32. The United States hereby gives notice to the defendant that, upon her conviction of the offense charged in Count One, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2), which requires any person

convicted of such offense to forfeit property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense, including but not limited to:

    (a)    the real property and premises located at 651 NE 177 Street, Miami, FL 33162, and all proceeds traceable thereto; and

    (b)    the real property and premises located at 17921 NE 9th Ct, North Miami Beach, FL 33162, and all proceeds traceable thereto.

33. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2) and 982(b)(1); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT TWO

34. The United States hereby gives notice to the defendant that, upon her conviction of the offense charged in Count Two, the government will seek forfeiture in

accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property, including but not limited to:

    (a)    the real property and premises located at 651 NE 177 Street, Miami, FL 33162, and all proceeds traceable thereto; and

    (b)    the real property and premises located at 17921 NE 9th Ct, North Miami Beach, FL 33162, and all proceeds traceable thereto.

35.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

*By Carolyn Pokorny, Assistant U.S. Attorney*
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

By Miriam L. Glaser Dauermann, Trial Attorney
GLENN S. LEON
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE